UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN ALLEN MCCARTHY,<br><br>  Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security[1],<br><br>  Defendant. | Case No. 1:24-cv-00937-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

On August 13, 2024, Plaintiff Nathan Allen McCarthy ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   FACTUAL BACKGROUND

On January 29, 2021, Plaintiff filed an application for SSI payments, alleging that he became disabled on July 10, 2017. (Administrative Record ("AR") 122.)

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 3, 9.)

Plaintiff was born on February 16, 1972, and was 48 years old on the application date. (AR 146.) Plaintiff had no previous relevant work experience. (AR 131).

## A.  Relevant Medical Evidence[3]

### 1.  Plaintiff's Mental Functioning

The record contains two opinions from mental health physician's assessing Plaintiff's mental functioning. The first opinion is from state agency physician Tawnya Brode, Pys.D., at the initial review on June 21, 2021. (AR 318.) Dr. Brode opined that Plaintiff had moderate limitations in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday without interruptions; and interact appropriately with the general public. (AR 321–22.) Dr. Brode further opined that Plaintiff was "not significantly limited" as to several functional areas, including carrying out simple repetitive instructions and having limited public contact. (AR 322, 323.) The second is from state agency physician Alan D. Entin, Ph.D., (AR 338), who assessed the same limitations as Dr. Brode as a part of his October 8, 2021 reconsideration review. (AR 342–45, 338.)

### 2.  Plaintiff's Sleep Disturbances

Starting in February 2020, Plaintiff began treatment for a variety of mental health concerns including sleep disturbances and insomnia. February 2020 treatment notes reflect that Plaintiff reported waking up 15 to 20 times with nightmares. (AR 1255.) A year later, in February 2021, Plaintiff reported that he was "sleeping better." (AR 810.) But in March 2021, treatment notes reflect Plaintiff's again reported of continued sleep disturbances, (AR 1260.) The records from April 2021 also reflect Plaintiff reporting having difficulties getting, but not staying, asleep, as well as fearing taking injection medications for schizophrenia at the same time as his other medications (including his medications for sleep disturbances) because the combination of the medications would make him sleep for a week. (AR 819, 1381.) May 2021 treatment records reflect Plaintiff's reports of improved sleep and a decrease in nightmares. (AR 1602).[4] June 2021 records reflect Plaintiff reporting sleeping from 5:00pm or 6:00pm until 3:00am. (AR 1603.) Then

---

[3] The Court has also omitted discussion of facts not relevant to its holding.

[4] In June 2021, as a part of a disability report, Plaintiff also reported an increase in nightmares and insomnia after a change to his medication due to side effects. (AR 527.)

2

in December 2021, records reflect Plaintiff reports of continued difficulty falling asleep, though also reporting "adequate sleep." (AR 1952, 1961.) The next year, in February 2022, records reflect Plaintiff's continued complaints or poor sleep, nightmares, and PTSD related flashbacks. (AR 1999, 2009, 2010.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on July 15, 2021, and again on reconsideration on December 28, 2021. (AR 309–27, 328–49.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 381.) On May 12, 2023, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 293–305.)

In responding to his attorney's question about his biggest impairment getting or keeping a job, Plaintiff testified about, among other things, the biggest impairments were not sleeping, nightmares, and insomnia. (AR 300). He testified that medication "helps a little bit," (*id.*), but that he still experiences "night terrors" and "nightmares" that wake him "up every hour . . . until about 4:00 in the morning" at which point he is unable to go back to sleep, (AR 303).

A vocational expert ("VE") also testified at the hearing. (AR 305–07.) The VE testified that, based on their experience, more than eight days of absenteeism, missing deadlines, and / or being off task fifteen percent of the workday would be preclusive of any position. (AR 306–07.)

**C.     The ALJ's Decision**

In a decision dated July 19, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 122–33.)

In that decision, the ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 124–32.). The ALJ decided that Plaintiff had not engaged in substantial gainful activity since January 29, 2021, the application date (Step One). (AR 124.) At Step Two, the ALJ found Plaintiff's following impairments to be severe: bipolar disorder, unspecified psychosis disorder, schizophrenia, generalized anxiety disorder, alcohol abuse disorder, obesity, congestive heart failure, hypertension, and diabetes mellitus. (AR 124–25.) The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled

3

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three). (AR 125–27.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except he is capable of understanding, remembering and carrying out simple instructions. The claimant requires a settling that is goal oriented versus requiring that specified pace be maintained consistently throughout the workday. The claimant can tolerate occasional interaction with the public and can tolerate occasional changes in the work setting. The claimant can frequently climb rams and stairs, stoop, kneel, crouch, crawl and balance. The claimant can occasionally climb ladders, ropes, and scaffolds.

(AR 127.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 1052.)

The ALJ next made the following findings: Plaintiff (1) had no relevant work experience; (2) fell into the category of "a younger individual" at the time the application was filed bit had changed age category since that time to "closely approaching advanced age;" and (3) had at least a high school education (Step Four). (AR 131.) In light of those findings along with the ALJ's determination of Plaintiff's RFC, the ALJ further found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" (Step Five)—specifically, cleaner, café attendant, and mail clerk. (AR 131–32.)

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

4

## D. Review of the ALJ's Decision

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 8, 2021. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481. On August 13, 2024, Plaintiff filed a Complaint in the United States District Court seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## III.     LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

       1.    <u>Review of an ALJ's Findings for Substantial Evidence</u>

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole,

weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

### 2. Review of an ALJ's Credibility Determination

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not

credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

## IV.  DISCUSSION

Plaintiff contends that (1) the mental health limitations assessed by the ALJ and incorporated into the RFC are not supported by substantial evidence, (Doc. 14 at 4–8), and (2) the ALJ failed to articulate clear and convincing reasons for discounting his allegations of sleep deprivation, (*id.* at 8–12). The Commissioner responds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, (Doc. 18 at 3–6), and that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations, (*id.* at 6–7.) While any error arising related to Plaintiff's first theory of error would necessarily be harmless, the Court agrees with Plaintiff that the ALJ improperly discredited his subjective symptom statements with respect to his reports of sleep disturbance and associated limitations and will remand for further proceedings.

**A.  Even if the ALJ did err in assessing the RFC with regard to Plaintiff's mental health limitations, any such error was harmless.**

The ALJ assessed Plaintiff's RFC as retaining "the residual functional capacity to perform light work . . . except he is capable of understanding, remembering and carrying out simple instructions," that he "requires a setting that is goal oriented versus requiring that specified pace be maintained consistently throughout the workday," and that he "can tolerate occasional changes in the work setting." (AR 127). Plaintiff argues that this RFC cannot stand as there is no medical opinion to support these limitations. (Doc. 14 at 6). Defendant responds by noting that even though Plaintiff takes issue with the ALJ's assessed RFC, it is unclear why as any such error could not be prejudicial. (Doc. 4 at 4). Specifically, Defendant notes that the ALJ's decision that Plaintiff had moderate limitations as to all areas of mental functioning was, in fact, more favorable than that of the medical opinions in the record who assessed mild to moderate limitations. (*Id.*; *see also* Doc. 14 at 5).

Even assuming it was error for the ALJ to assess a more restrictive RFC than the limitations assessed by the medical opinions in the record, *contra Lemley v. Colvin*, No. 2:13-CV-0299-JTR,

8

2014 WL 1491107, at *7 (E.D. Wash. Apr. 15, 2014) ("Since the ALJ's physical RFC determination is consistent with or more restrictive than the limitations assessed by all other medical professionals of record, the ALJ's assessment of Plaintiff's physical functioning ability is supported by substantial record evidence and free of error"), any such error is harmless.

An error is harmless where "it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1112, 1115 (9th Cir. 2012). (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In assessing whether the error is harmless, the court looks to the record as a whole to determine whether the error alters the outcome of the case. *Id.* Generally, if the ALJ assesses a more restrictive RFC, even if the ALJ erred in the assessment, the error is harmless because the additional restriction is more favorable to the plaintiff. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (applying the harmless error doctrine where the mistake was non-prejudicial to the claimant); *De Herrera v. Astrue*, 372 F. App'x 771, 774 (9th Cir. 2010) (citing *Stout*); *see also Torres v. Berryhill*, 2018 U.S. Dist. LEXIS 124710 at *10 (S.D. Cal. July 25, 2018) (Huff, J.) (applying Stout); *see also Hopper v. Colvin*, No. 6:13-CV-01525-HZ, 2014 WL 6473566, at *5 (D. Or. Nov. 14, 2014) ("As discussed above, the ALJ does not err by adopting a more restrictive RFC than the evidence in the record supports."); *Halstead v. Colvin*, No. CV12-1706 PHX DGC, 2013 WL 3482186, at *3 (D. Ariz. July 11, 2013); *Moore v. Comm'r of Soc. Sec. Admin.*, No. 1:14-CV-00354-AC, 2015 WL 1731400, at *7 (D. Or. Apr. 14, 2015) ("Assuming, without deciding, the ALJ's determination was erroneous, this error is not reversible because Claimant does not demonstrate that he was in any way prejudiced by the ALJ adopting a more stringent limitation than was supported by the medical record"); *Dale v. Colvin*, No. 216CV00910RSLDWC, 2017 WL 354612, at *6 (W.D. Wash. Jan. 4, 2017), *report and recommendation adopted*, No. 2:16-CV-00910-RSL, 2017 WL 356672 (W.D. Wash. Jan. 24, 2017) ("When an ALJ's RFC finding is more restrictive than, or otherwise accounts for, opined limitations from a medical source, there can be no harmful error."). Although the burden of showing that the error was not harmless rests with the party attacking the agency's determination, the reviewing court can decide whether further administrative review is necessary to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (quoting *Shineski v.*

*Sanders*, 556 U.S. 396, 409–10 (2009)).  Critically, "where harmlessness is clear and not a 'borderline question,'" remand for reconsideration is not appropriate. *Id.*

Here, it is difficult to see how these stricter limitations constitute a consequential or prejudicial error to Plaintiff.  Even assuming the ALJ erred in giving Plaintiff a stricter limitation than the agency physicians, the ALJ's more restrictive RFC reduced the number of potential jobs available in the domestic economy that Plaintiff could perform.  Such a reduction makes it more— not less likely— that Plaintiff would be disabled.  Because the error rendered Plaintiff more likely to be disabled and the ALJ still did not render a favorable disability finding, the error proved "inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115.  The Court need not make an independent finding based on the evidence to conclude this error was harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  For the foregoing reasons, Plaintiff does not establish a reversible error on this point.

**B.    The ALJ committed harmful error in not providing clear and convincing reasons for discounting Plaintiff's subjective complaints of sleep disturbance.**

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 128.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with the medical record. (*Id.*) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "[w]hile subjective [symptom] testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms] and [their] disabling

10

effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting [subjective symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base their decision solely on the fact that the medical record failed to support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating her subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly, an ALJ must explain *how* the medical evidence is inconsistent with a plaintiff's reported symptoms and limitations, *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015), and may not "cherry-pick" medical evidence that favors disability without considering its context in the record, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

In support of the conclusion that Plaintiff's complaints were "not entirely consistent with the medical evidence and other evidence in the record," the ALJ broadly stated that the statements were "inconsistent because the evidence does not support the severity of the limitations as alleged at the hearing." (AR 128). The Court must determine whether this constitutes a clear and convincing reason for discounting Plaintiff's statements.

As noted above, in determining that the evidence did not support Plaintiff's statements about the severity of Plaintiff's limitations, the ALJ relied on several pieces of medical evidence. A careful review of the record reveals that (1) the evidence on which the ALJ relied was "cherry-picked," and (2) the ALJ failed to clearly and convincingly explain *how* the evidence cited was inconsistent with Plaintiff's subjective complaints.

First, the ALJ observed that "[t]he claimant's treatment has been essentially routine and

conservative in nature, consisting mostly of visits to the providers for medications management" and that "claimant's symptoms were waxing and waning but were generally stable." (AR 130). Specifically, as to the issue of Plaintiff's allegations of limiting insomnia and other sleep disturbances, (AR 128, 300, 303), the ALJ observed that "once [Plaintiff] started receiving Invega injections, he reported . . . better sleep [and] decreased nightmares." (AR 130 (citing AR 1602)). And while it is true that Plaintiff reported an improvement in sleep and a decrease in nightmares in May 2021, (AR 1602), Plaintiff points to additional medical evidence in the record after that date that indicate that his symptoms were not "stable," (Doc. 14 (citing 1255 (records detailing Plaintiff's February 2020 report of waking 15 to 20 times with nightmares); 810 (records detailing Plaintiff's February 2021 report that he was "sleeping better"), 1260 (records detailing Plaintiff's March 3, 2021 report of continued sleep disturbances), 1381 (records detailing Plaintiff's April 2021 report of having difficulties getting, but not staying, asleep), 819 (records detailing Plaintiff's April 2021 fear of taking the injections and his medication at the same time because that combination would cause him to sleep for a week), AR 527 (records detailing Plaintiff's June 2021 report of increased nightmares and insomnia after a change in medication due to side effects), 1603 (records detailing Plaintiff's June 2021 report of sleeping from around 5:00pm or 6:00pm until 3:00am), 1952 (records detailing Plaintiff's December 2021 reports of continued difficulty falling asleep, though also reporting "adequate sleep"), 1961 (same), 1999 (records detailing Plaintiff's February 2022 complaints of poor sleep), 2009 (same), 2010 (records detailing Plaintiff's February 2022 complaints of PTSD symptoms of poor sleep, nightmares, and flashbacks from experiencing fires)). Additionally, while the ALJ determined that Plaintiff's symptoms were "generally stable," in the very next sentence, the ALJ described Plaintiff as "report[ing] doing great and looking for work, but within a couple of months, [complaining] of inability to concentrate and to care for his daily activities." (*Id.*). This observation, while consistent with the medical record, undermines the ALJ's conclusion that Plaintiff's symptoms were "stable." (*Id.*). The ALJ's reliance on cherry-picked citations to the record without acknowledgment of the other pieces of medical evidence that tend to support Plaintiff's complaints, undermines the ALJ's conclusion that Plaintiff's symptoms were "stable." The ALJ did not provide clear and convincing reasons to support her conclusion that

Plaintiff's symptoms were "stable."

Second, the ALJ failed to adequately explain how the medical evidence was inconsistent with Plaintiff's reported symptoms and limitations. As an initial matter, the ALJ's analysis includes several paragraphs in which the ALJ merely recites medical evidence and then makes a general finding that that the evidence "does not support [Plaintiff's] allegations that [his] conditions render him wholly disabled." (AR 130). The ALJ fails to tie the medical evidence she recites to the Plaintiff's complaints that she purportedly finds inconsistent with the medical evidence recited. The ALJ also does not explain how any purported inconsistency relates to Plaintiff's alleged limitations or RFC. Without an indication of *which* symptoms or limitations the ALJ discredits, clear inconsistencies between the medical evidence recited and Plaintiff's reported symptoms and limitations, or to what extent the ALJ credited Plaintiff's testimony and incorporated it into the RFC, the ALJ's "path [cannot be] reasonably discerned." *Molina v. Astrue*, 674 F.3d 1112, 1121 (9th Cir. 2012); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).

This is especially true in light of the fact that the paragraphs reciting the medical evidence include evidence that appear to support Plaintiff's reports and undermine the ALJ's conclusion. For example, these paragraphs include detail like "[Plaintiff's] medical records showed reports of . . . nightmares waking him up, *as testified*," (AR 128 (emphasis added) (citing AR 1255)); as well as reference to evidence that while Plaintiff's "nightmares decreased . . .he was having some bizarre dreams," (*id.* (citing 1603)), and that Plaintiff "reported having nightmares and waking up 'smelling fire,'" (AR 129 (citing 2217)).

The Court is unable to find the ALJ met the burden provide clear and convincing reasons to discount Plaintiff's testimony concerning the severity of his sleep disturbances and reported corresponding limitations.[6]

**C.     Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four

---

[6] The error is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ credited Plaintiff's statements related to Plaintiff's insomnia and assessed a more restrictive RFC, the disability determination may have been different. Thus, the error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for an immediate award of benefits, or, in the alternative, for further administrative proceedings. (Doc. 12 at 29.)

The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the RFC determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy.[7] *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Thus, a remand for further proceedings to properly assess Plaintiff's subjective symptom statements is appropriate in this action.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Nathan Allen McCarthy and against Defendant Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  __May 23, 2025__                         */s/ Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE

---

[7] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to what Plaintiff's RFC should ultimately be. That is for the ALJ to decide. *Ford*, 950 F.3d at 1154.

14